**BAKER MOTORS, INC., Appellee,**

v.

**BAKER MOTORS TOWING, INC., et al., Appellants.**

[Cite as *Baker Motors, Inc. v. Baker Motors Towing, Inc.*, 183 Ohio App.3d 223, 2009-Ohio-3294.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 92049.

Decided July 2, 2009.

224

Robert J. Fedor, Jennifer A. MacDowell, and Susan P. Taylor, for appellee. Paul Knott, for appellants.

KENNETH A. ROCCO, Presiding Judge.

{¶ 1} Defendants-appellants, Baker Motors Towing, Inc. ("BMT") and Mark Lundy, appeal from a common pleas court order denying their motion to vacate a cognovit judgment entered against them. They argue that their motion was timely and asserted meritorious defenses to the claims of plaintiff-appellee, Baker Motors, Inc. ("BMI"). We find that the common pleas court abused its discretion by denying the motion to vacate. Accordingly, we reverse and remand with instructions to vacate the judgment.

### Procedural History

{¶ 2} On April 25, 2008, BMI filed its complaint for judgment on (1) a cognovit note that BMT executed in favor of BMI and (2) Lundy's personal guaranty of BMT's obligation, which also contained a confession of judgment. The court immediately entered judgment against both BMT and Lundy in the amount of $123,163.73 plus interest and attorney fees.

{¶ 3} On May 28, 2008, BMT and Lundy moved the court to vacate the judgment entered against them. They asserted that the court should vacate the judgment because their motion was timely and they had a meritorious defense and counterclaim to assert.

{¶ 4} In the motion to vacate, BMT and Lundy alleged that BMT had purchased the assets of BMI in January 2007. The asset-purchase agreement required BMT to pay BMI $20,000 at closing and to provide a cognovit promissory note for the remainder of the purchase price. Lundy guaranteed the balance due to BMI. A separate real estate purchase agreement provided for the transfer of certain real property from Anna Baker to Cheryl Lundy.

{¶ 5} According to the motion to vacate, on May 16, 2007, Lundy received notice that the Ohio Bureau of Workers' Compensation ("OBWC") had determined that BMT was the successor corporation of BMI and was "responsible for all existing and future financial rights and obligations associated with [BMI]." On June 7, 2007, the OBWC invoiced BMT for $254,161.73 in premiums that BMI had failed to pay. BMT asserted that the OBWC claimed a statutory lien on all of BMT's property.

{¶ 6} BMT stopped making payment under the asset-purchase agreement after a partial payment in March 2008. It claimed the right to do so under sections three[1] and eleven[2] of the asset purchase agreement, section two[3] of the first amendment to the asset purchase agreement, and section six of the cognovit note.

{¶ 7} The court conducted a hearing on the motion to vacate, at which it heard the testimony of Mark Lundy; Michelle Mergen of the OBWC; George Baker, the president of BMI; and his wife, Anna Baker. On August 11, 2008, the court denied the motion to vacate. This appeal followed.

### Law and Analysis

{¶ 8} We review the common pleas court's ruling on the motion to vacate for abuse of discretion. See, e.g., *CitiMortgage, Inc. v. Guthrie*, 175 Ohio App.3d 115, 2008-Ohio-583, 885 N.E.2d 303, ¶ 14. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 9} Generally, a party who moves to vacate a judgment must demonstrate that he has a meritorious defense to present if relief is granted, that he is entitled to relief on one of the grounds listed in Civ.R. 60(B), and that the motion is made within a reasonable time. *GTE Auto. Elec., Inc. v. ARC Indus., Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113. However, where, as here, the movant seeks to vacate a cognovit judgment, the parties agree that a less

---

1. Generally speaking, in paragraph three of the asset-purchase agreement, BMI warranted that the assets it sold to BMT were free from any adverse claims or liens.

2. In paragraph 11, BMI agreed to indemnify BMT and hold it harmless from any liability for damages resulting from an adverse claim.

3. The first amendment to the asset-purchase agreement stated that BMT was required to give BMI notice if any governmental authority initiated any action with respect to a lien against the assets "arising from or related to the operation of the Business prior to Closing." The agreement gave BMI 180 days after this notice to resolve a claim; all payment due pursuant to the note and guaranty were suspended during this time. If BMI did not resolve the claim, then BMT's payment obligations ceased, and the contract was deemed paid in full.

stringent standard applies because the movant did not have an opportunity to be heard before the judgment was entered. "[A] movant who files for relief from a judgment taken upon a cognovit note need only establish (1) a meritorious defense and (2) that the motion was timely made." *Medina Supply Co. v. Corrado* (1996), 116 Ohio App.3d 847, 850–851, 689 N.E.2d 600.

{¶ 10} BMI concedes that the defendants' motion was timely, but asserts that they have not demonstrated a meritorious defense. Thus, our review here is limited to whether the trial court abused its discretion by determining that BMT had not demonstrated a meritorious defense.

{¶ 11} BMT claims that it demonstrated three meritorious defenses to BMI's claims: (1) that its performance was excused by BMI's breach of its warranty that the assets were free and clear of all liens and adverse claims, (2) that it had the right to set off the amounts claimed by the OBWC against the balance due to BMI under the contract, and (3) that its payment obligations were suspended once BMT notified BMI of the state's claims.

{¶ 12} The defenses available to the maker of a cognovit note are extremely limited. The defense of nondefault is certainly one. "Other asserted defenses found meritorious include improper conduct in obtaining the debtor's signature on the note; deviation from proper procedures in confessing judgment on the note; and miscalculation of the amount remaining due on the note at the time of confession of judgment. * * * Thus, a meritorious defense is one that goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note." *First Natl. Bank of Pandora v. Freed*, Hancock App. No. 5–03–36, 2004-Ohio-3554, 2004 WL 1489074, ¶ 9–10.

{¶ 13} A counterclaim or set-off is not a meritorious defense to a cognovit judgment. *Kistner v. Cameo Countertops, Inc.*, Lucas App. No. L–04–1128, 2005-Ohio-1883, 2005 WL 928156, ¶ 6. Rather, "a counterclaim or set-off is, in effect, a claim 'that would reduce or satisfy the amount due on the note'; and relief from cognovit judgment is 'granted only to the defendant who has a *defense* to the action.'" (Emphasis sic.) *Natl. City Bank v. Mulinex*, Lucas App. No. L–05–1066, 2005-Ohio-5460, 2005 WL 2600343, ¶ 20, quoting *Cambridge Prod. Credit Assn. v. Shaner* (May 8, 1987), Perry App. No. CA–351, 1987 WL 11007.[4]

---

4. Of course, a judgment debtor retains the right to prosecute a counterclaim in a separate action. *Cent. Natl. Bank of Cleveland v. Std. Loan & Fin. Co.* (1964), 5 Ohio App.2d 101, 105, 29 O.O.2d 255, 195 N.E.2d 597. See *Shuford v. Owens*, Franklin App. No. 07AP–1068, 2008-Ohio-6220, 2008 WL 5064931, ¶ 20.

{¶ 14} BMT's contention that BMI breached its warranty of title is not a defense but a counterclaim. It does not call into question "the integrity and validity of the creation of the debt or note" or "the state of the underlying debt at the time of confession of judgment." Consequently, it is not a defense to BMI's claim.[5] Similarly, BMT's claim that it may set off its liability to the OBWC against its liability to BMI is not a defense to liability under the note, but a means of reducing liability.

{¶ 15} On the other hand, however, BMT alleged a defense to BMI's claims when it argued that its payment obligations were suspended under the contract. This argument goes to the "state of the underlying debt at the time of confession of judgment." It contends that nonpayment was not a breach. This defense is supported by section two of the first amendment to the asset-purchase agreement, which states that if a state government agency "shall at any time * * * initiate any action against [BMT] and/or any of the Sale Assets with respect to any liens against [BMI] and/or any of the Sale Assets arising from or related to the operation of the Business prior to Closing, [BMT] shall give [BMI] prompt notice thereof." The contract gives BMI 180 days from the date of the notice to resolve all issues with the governmental authority. During this time, "any and all payment obligations of [BMT] (and Mark Lundy, as guarantor) under the Note shall be suspended."

{¶ 16} In opposition to BMT's argument, BMI asserts, among other things, that the OBWC did not initiate any action against BMT that would have allowed BMT to provide notice to BMI under section two. BMI also argues that BMT did not provide it with proper notice. "The movant's burden [on a motion for relief from judgment] is to allege a meritorious defense, not to prevail with respect to the truth of the meritorious defense." *Colley v. Bazell* (1980), 64 Ohio St.2d 243, 247, 18 O.O.3d 442, 416 N.E.2d 605, fn. 3; see also *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St.3d 64, 67, 18 OBR 96, 479 N.E.2d 879. "[T]he movant is *not* required to prove that she will ultimately prevail if relief is granted. Rather, the burden on the moving party is only to *allege* operative facts which would constitute a meritorious defense if found to be true." (Emphasis sic.) *Fouts v. Weiss–Carson* (1991), 77 Ohio App.3d 563, 565, 602 N.E.2d 1231. BMT and Lundy alleged operative facts that would constitute a meritorious defense if found to be true. Therefore, the common pleas court abused its discretion by denying the motion to vacate. Accordingly, we reverse the judg-

---

5. A breach excuses the other party from performing only where the contract consists of an exchange of promises, and performance by one is a condition to performance by the other. See Restatement, of the Law 2d, Contracts, Section 347. No reasonable construction of the contract can make nonbreach of the warranty of title a condition precedent to BMT's payments.

ment and remand the cause with instructions to vacate the judgment on the cognovit note and guaranty.

{¶ 17} Cognovit notes are disfavored; hence, the burden is reduced on a motion to vacate a cognovit judgment. *Lykins Oil Co. v. Pritchard,* 169 Ohio App.3d 194, 2006-Ohio-5262, 862 N.E.2d 192, ¶ 1; *Gerold v. Bush,* Erie App. No. E–07–013, 2007-Ohio-5885, 2007 WL 3227388, ¶ 15–16. BMT has clearly met this reduced burden here by presenting a defense that, if proven, would defeat liability on the note. The OBWC asserted a $250,000 statutory lien against the assets purchased by BMT. This lien was based on BMI's failure to pay its premiums, and thus appears to arise from or relate to the operation of the business prior to the closing of the asset-purchase agreement. Juxtaposed against this diminution in the value of BMT's assets is BMT's total remaining debt to BMI on the cognovit note of $123,000. At the time the complaint was filed, BMT had missed fewer than two full payments; less than $2,000 was then due and payable. BMT is entitled to the opportunity to demonstrate that the OBWC's assertion of a lien against its assets suspends (and may ultimately eliminate) its payment obligation, thus precluding BMI from obtaining a judgment on the cognovit note.

Judgment reversed
and cause remanded.

McMONAGLE and BOYLE, JJ., concur.